UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
SICHENZIA ROSS FERENCE, LLP and        :   Case No. 1:23-cv-6415
WELTZ LAW P.C.,                                           :
                                                                            :   **COMPLAINT**
                               Plaintiffs,                      :
                                                                            :
                  vs.                                                  :
                                                                            :
SKULL VALLEY BAND OF GOSHUTE   :
INDIANS OF UTAH,                                      :
                                                                            :
                               Defendant.                   :
                                                                            :
-------------------------------------------------------------- X

      Plaintiffs Sichenzia Ross Ference LLP ("SRF") and Weltz Law P.C. ("Weltz Law") (collectively, "Plaintiffs") for their Complaint against Defendant Skull Valley Band of Goshute Indians of Utah ("Defendant"), allege as follows:

## INTRODUCTION

      1.     This case is about a Native American Tribe that has sued law firms in a foreign Tribal court in an effort to avoid paying legal fees owed. Plaintiffs are law firms located in New York that were retained by Defendant on a contingency basis in March 2019 to represent Defendant in a lawsuit against U.S. Bank National Association ("U.S. Bank") concerning certain residual securities. The Retainer Agreement executed by Defendant for the engagement of the law firms provides that the venue for disputes "shall exclusively be in New York County, New York." Thereafter, SRF and Weltz Kakos Gerbi Wolinetz Volynsky LLP ("WKGWV") commenced and prosecuted the action styled *Skull Valley Band of Goshute Indians of Utah, et al. v. U.S. Bank National Association*, Index No. 650640/2020 (Supreme Court, NY County) (the "State Action"), but would later cease representing plaintiffs in the State Action. SRF and WKGWV each filed charging liens. The State Action was recently settled and dismissed with prejudice.

1

2. In or about December 2021, Defendant (and initially the other plaintiff entities in the State Action, collectively for convenience purposes, the "SVB Tribe"), sued Plaintiffs in the Court of Indian Offenses for the Western Region in Arizona ("Tribal Court") in a matter ultimately styled *Skull Valley Band of Goshute Indians of Utah v. Sichenzia Ross Ference LLP and Weltz Law P.C.*, Case No. CIV-21-WR13 (the "Tribal Action"). In the Tribal Action, Defendant is seeking a declaration that Plaintiffs' Retainer Agreement for the State Action should be found unenforceable against Defendant purportedly based upon sovereign immunity. Significantly, Defendant commenced the Tribal Action before it obtained any recovery in the State Action.

3. In the utmost bad faith and without any legal or factual basis, Defendant commenced the Tribal Action solely to harass Plaintiffs, frustrate their ability to obtain their contingency fee, try to steal Plaintiffs' contingency fee and force them to litigate in a foreign Tribal Court in Arizona that has no personal or subject matter over them. Plaintiffs never implicitly or explicitly agreed to be hailed into Tribal Court in Arizona (or any Tribal court), nor was it reasonably foreseeable that such could be the case. To the contrary, the parties expressly agreed in the Retainer Agreement to litigate any disputes in New York County.

4. In the Tribal Action, Plaintiffs moved to dismiss Defendant's First Amended Complaint (and initial complaint) for lack of jurisdiction, as there is not even a colorable claim that jurisdiction exists there. Nevertheless, the Tribal Court, in contravention of the only case cited in its one-sentence explanation, improperly denied the dismissal on jurisdictional grounds, ordered SRF and Weltz Law to answer the First Amended Complaint, and further ordered discovery, which commenced on or around March 15, 2023, and a trial. At all times, Plaintiffs have not waived, and have fully preserved, all jurisdictional objections.

5. This Court should issue a declaratory judgment that the Defendant is without jurisdiction to prosecute the Tribal Action and that the Tribal Court is without jurisdiction to adjudicate the Tribal Action, enjoin the Tribal Court from exercising jurisdiction over Plaintiffs and proceeding with the Tribal Action, and stay all discovery and other obligations of the parties in the Tribal Action pending a determination in this matter. This Court has jurisdiction over this action because Defendant's and Tribal Court's attempt to prosecute and adjudicate the Tribal Action presents a federal question under 28 U.S.C. § 1331.

6. Defendant and the Tribal Court in the Tribal Action plainly lack jurisdiction over the conduct alleged in the Tribal Action. Plaintiffs here are not tribal members or tribal corporations. Further, none of Plaintiffs' conduct at issue occurred in Indian country or tribal lands. In fact, it is undisputed that Plaintiffs have never entered Defendant's Tribal lands or Indian country. Also, Plaintiffs do not have even minimum contacts with Arizona, the location of the Tribal Court. In addition, Defendant agreed to litigate all disputes in New York County. That should be the end of the jurisdictional inquiry. Even if the telephone calls and electronic communications between New York and Utah (where Defendant is located) are considered relevant (and also insufficient to confer personal jurisdiction in Arizona), Defendant still cannot demonstrate that the conduct threatens either tribal governance or internal relations among Tribe members, as required for either of the exceptions to the rule barring tribal regulation of non-Indians to apply. Both exceptions are also inapplicable for other reasons discussed below.

7. Under the circumstances, exhaustion of tribal remedies is not and should not be required because jurisdiction over the non-Indian Plaintiffs for their alleged conduct is so clearly lacking that exhaustion would serve no purpose but delay and is futile. Accordingly, the Court

should declare that Defendant and Tribal Court in the Tribal Action are without jurisdiction to prosecute or adjudicate the Tribal Action and should enter an injunction against same.

## PARTIES

8.      Plaintiffs here are the defendants in the Tribal Action.  SRF is a law firm located in New York County, New York.  Weltz Law is a law firm located in Nassau County, New York.  Plaintiffs here are not tribal members or tribal corporations.  Plaintiffs have never entered Tribal lands of the Defendant in Utah or elsewhere. SRF and Weltz Law met with members of Defendant and their local counsel at their local counsel's office in Salt Lake City, Utah, which was not on Tribal lands.  Further, no meetings or communications between Plaintiffs and the Defendant ever occurred in, to or from Arizona, where the Tribal Court is located.

9.      Defendant is alleged to be a federally recognized Native American tribe located at 407 Skull Valley Road, Skull Valley, Utah 84029-8004.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this declaratory judgment action under 28 U.S.C. § 1331 because the existence of tribal jurisdiction over non-members is a Federal question. *Nat. Farmer's Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 852 (1985).

11.     An actual case or controversy exists between the Plaintiffs and Defendant due to the filing and prosecution of the Tribal Action against Plaintiffs in the Court of Indian Offenses for the Western Region located in the State of Arizona.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## BACKGROUND

13.     Tribal courts are not courts of general jurisdiction. *Nevada v. Hicks*, 533 U.S. 353

4

(2001). As domestic dependent quasi-sovereign nations, the jurisdiction of Indian tribes over non-Indians is strictly limited. A tribe's adjudicative jurisdiction over non-members cannot exceed its legislative jurisdiction, and may not even go that far. *Hicks*, 533 U.S. at 357-58; *see also id*. at 358 n.2 ("we have never held that a tribal court had jurisdiction over a nonmember defendant").

14. The "sovereignty that the Indian tribes" enjoy "is of a unique and limited character, … center[ed] on the land held by the tribe and on tribal members within the reservation." *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 327 (2008) (quotations omitted). Thus, "tribal jurisdiction is … cabined by geography: The jurisdiction of tribal courts does not extend beyond tribal boundaries." *Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 937-38 (9th Cir. 2009) (*citing Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 658 n. 12 (2001)).

15. Tribal jurisdiction over non-members does not extend past land that constitutes "Indian country" as defined by 18 U.S.C. § 1151: (a) "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." *See DeCoteau v. District County Court for Tenth Judicial Dist.*, 420 U. S. 425, 427, n. 2 (1975) (recognizing that Section 1151 generally applies to questions of civil jurisdiction).

16. Despite these settled restrictions on tribal jurisdiction, the Tribal Court in the Tribal Action purports to possess broad, general jurisdiction against the non-member defendants - - the

5

Plaintiffs in this action. Although Plaintiffs have objected to jurisdiction in the Tribal Action, the Tribal Court and appellate Tribal court denied Plaintiffs' jurisdictional objections. On May 15, 2023, the Tribal Court in the Tribal Action ordered SRF and Weltz Law to interpose an answer to the First Amended Complaint by May 29, 2023 and set forth a discovery, pre-trial and trial schedule for the Tribal Action. Thus, without the immediate relief requested by Plaintiffs, Plaintiffs will be required to litigate the Tribal Action even though the Tribal Court has not even the color of jurisdiction over Plaintiffs.

**DEFENDANT RETAINS NEW YORK LAWYERS TO FILE A NEW YORK LAWSUIT**

17. In 2018, Defendant's long-time lawyer, Danny Quintana, Esq. ("Quintana"), was introduced to Irwin Weltz, Esq. ("Weltz"), then a lawyer with SRF, to review a potential matter involving Defendant. Quintana would solicit Weltz's assistance. The potential matter did not involve Tribal lands or Tribal governance. Instead, it related to certain residual securities held by the SVB Tribe.

18. Weltz spoke to Quintana and reviewed various background materials. Initially, Weltz was not all that interested in the potential matter. Over time there were further discussions and communications and ultimately in October 2018 Weltz would travel with his then law partner, Michal H. Ference, Esq. ("Ference") to Utah to meet in person with Quintana (and his other firm lawyers) and Candace Bear, the Tribal Chairperson, and Sheila Urias, the Tribal Secretary. The meeting took place in Quintana's law offices located in Salt Lake City, Utah, and neither Weltz nor Ference entered any Tribal lands. In fact, it is undisputed that at no time ever would anyone from SRF or Weltz Law enter any Tribal lands or Indian country.

19. Ultimately, in March 2019, Defendant would retain Plaintiffs to commence and prosecute a court case against U.S. Bank and Candace Bear, the Tribe's Chairperson, signed

Plaintiffs' Retainer Agreement. That Retainer Agreement provides that any disputes would be litigated in New York County. Plaintiffs and Defendant determined to file suit in the Supreme Court of the State of New York, New York County, primarily because there were to prior favorable decisions from the First Department on the subject matter.

**SRF AND WKGWV FILE AND LITIGATE THE ACITION IN NEW YORK COUNTY**

20. On January 28, 2020, SRF and WKGWV filed the State Action in the Supreme Court of the State of New York, New York County. The basis for the State Action was U.S. Bank's alleged breach of various real estate mortgage investment conduit ("REMIC") agreements and their corresponding trust agreements, of which the SVB Tribe were the residual holders and beneficiaries, and of which U.S. Bank was the trustee.

21. On February 26, 2020, U.S. Bank removed the State Action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

22. On or about May 27, 2020, the SVB Tribe moved for an order pursuant to 28 U.S.C. § 1447(c) to remand the State Action back to the Supreme Court of the State of New York, County of New York.

23. On or about November 7, 2020, SRF's engagement with Defendant was terminated and on or about December 21, 2020 SRF filed a Motion to Withdraw as counsel. SRF concurrently filed a Notice of Charging Lien.

24. On or about December 21, 2020, the SDNY (Hon. J. Paul Oetken) remanded the State Action back to the Supreme Court of the State of New York, County of New York. 25.

During this period of time prior to remand, the State Action was actively litigated in this venue, and substantial discovery took place.

26. On December 28, 2020, the parties in the State Action mediated the dispute and reached a settlement. The SVB Tribe, however, determined not to go through with the settlement.

27. The relationship between WKGWV and Defendant would thereafter deteriorate and in February and March 2021 WKGWV advised Defendant that it should retain new counsel to substitute in for WKGWV in view of the complete breakdown in the relationship caused by Defendant's various acts and conduct. In May 2021, the SVB Tribe retained new counsel and WKGWV substituted out of the case and filed a charging lien. Ultimately, on or about June 7, 2023, the parties to the State Action reached a settlement, the terms of which have been kept confidential, and discontinued the State Action.

## SVB TRIBE FILE TRIBAL ACTION

28. In or about December 2021, the SVB Tribe commenced the Tribal Action. Plaintiffs in the Tribal Action would thereafter amend their complaint to remove the plaintiff entities and certain claims. The remaining claim by Defendant in the First Amended Complaint seeks a declaration that the Retainer Agreement is unenforceable based upon sovereign immunity.

29. Plaintiffs here, defendants in the Tribal Action, moved to dismiss the First Amended Complaint (and initial Complaint) for lack of personal and subject matter jurisdiction. The Tribal Court denied the motion and the denial was upheld on appeal. The Tribal Court has recently ordered the parties in the Tribal Action to proceed with discovery and then trial.

30. Defendant has not specifically averred that any of the activities it alleges in its First Amended Complaint in the Tribal Action occurred within the boundaries of an Indian reservation or other area of Indian country, nor could it. Instead, Defendant seemingly contends that email communications between SRF or Weltz Law and a purported Tribal email address suffices to subject Plaintiffs to the Tribal court's jurisdiction in Arizona, a forum that has no personal

8

jurisdiction over Plaintiffs, New York law firms. Defendant's vague allegations are intentional. It is well aware that Plaintiffs never once set foot on Tribal lands or Indian country, nor do they or could they claim Plaintiffs did. Accordingly, the Tribal Court in the Tribal Action plainly lacks any jurisdiction over the non-member Plaintiffs for conduct that occurred out of Plaintiffs' New York offices and in the New York Courts. *See Plains Commerce Bank*, 554 U.S. at 327; *Philip Morris*, 569 F.3d at 937-38.

31. While *Montana v. United States*, 450 U.S. 544 (1981) provides exceptions to the general rule that a tribe lacks jurisdiction over non-members, those exceptions can apply *only to non-member conduct in Indian country*, not present here. *See Hornell Brewing Co. v. Rosebud Sioux Tribal*, 133 F.3d 1087, 1091-92 (8th Cir. 1998); *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 786 (7th Cir. 2014); *Philip Morris*, 569 F.3d at 937-38; *see also Plains Commerce Bank*, 554 U.S. at 327. Here, there can be no doubt that all of the Plaintiffs' alleged conduct occurred entirely outside of Indian country, and the Court need not even reach the applicability of the *Montana* exceptions.

**THE MONTANA EXCEPTIONS DO NOT APPLY AND ARE NOT SATISFIED**

32. Even if any of Plaintiffs' alleged conduct occurred in Indian country—and it did not—tribal jurisdiction is plainly lacking under the *Montana* exceptions.

33. Under *Montana*, even where non-Indian conduct occurs within Indian country (unlike in this case), tribal jurisdiction over such conduct is still strictly limited. Efforts by a tribe "to regulate nonmembers, especially on non-Indian fee land [within an Indian reservation] are presumptively invalid." *Plains Commerce Bank*, 554 U.S. at 330 (internal quotation marks omitted). The "sovereignty that the Indian tribes" enjoy, which provides authority to regulate such conduct, "is of a unique and limited character, ... center[ed] on the land held by the tribe and on

9

tribal members within the reservation. *Id.* at 327 (quotations omitted). In particular, a tribe presumptively lacks jurisdiction over the activities of non-Indians even within Indian country, unless the tribe can satisfy one of the two very narrow exceptions under *Montana v. United States*, 450 U.S. 544, 565 (1981).

34. The burden rests on Defendant to establish one of the exceptions to *Montana*'s general rule. *Atkinson Trading Co.*, 532 U.S. at 644. These exceptions are extremely limited ones, and cannot be construed in a manner that would swallow the rule, or severely shrink it. *Plains Commerce Bank*, 554 U.S. at 330 (quoting *Atkinson Trading Co.*, 532 U.S. at 654-55, 57, and *Strate v. A-1 Contractors*, 520 U.S. 438, 458 (1997)).

35. The two limited *Montana* exceptions to the general prohibition of tribal jurisdiction are (1) a tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements where necessary to protect tribal self-government and to control internal relations; and (2) a tribe may exercise civil authority over the conduct of non-Indians on fee lands within the reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe and the exercise of jurisdiction is needed to preserve the tribe's right to make their own laws and be governed by them. *Id.* at 329-30, 332; *MacArthur v. San Juan Cty.*, 497 F.3d 1057, 1075 (10th Cir. 2002). As noted, these limited exceptions to the general rule that a tribe lacks jurisdiction over non-members only apply when the alleged conduct occurred in Indian country, as defined by 18 U.S.C. § 1151, which is not the case at hand.

36. The Supreme Court has made clear that *Montana*'s consensual relationship exception only applies to conduct that intrudes on the internal relations of the Tribe or threatens

tribal self-rule. *Plains Commerce Bank*, 554 U.S. at 334-35. No such conduct is alleged in the Tribal Action, nor could it be.

37. Moreover, even when there is a consensual relationship, there must be a nexus between that relationship and the conduct the tribe seeks to regulate or adjudicate. *MacArthur*, 309 F.3d at 1223; *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1152 (10th Cir. 2011). No such connection exists here.

38. Defendant also cannot satisfy the second *Montana* exception because it has not alleged facts indicating that the challenged conduct imperils the subsistence or survival of the tribe or that the exercise of jurisdiction "is needed to preserve the [tribe's] right to make their own laws and be governed by them." *MacArthur*, 497 F.3d at 1075; *Plains*, 554 U.S. at 341 ("The conduct must do more than injure the tribe, it must 'imperil the subsistence' of the tribal community."). The activities alleged in the First Amended Complaint in the Tribal Action also do not threaten the political integrity, economic security, or health or welfare of Defendant so as to permit the assertion of jurisdiction over activities of non-Indians or non-Indian land.

39. Accordingly, even if this case involved alleged conduct in Indian country, which it does not, the *Montana* exceptions still do not apply here and still do not permit the assertion of jurisdiction over Plaintiffs in Tribal Court in the Tribal Action.

**PLAINTIFFS ARE ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF**

**A. The Tribal Court in the Tribal Action Clearly Lacks Jurisdiction**

40. As set forth above, the Tribal Court in the Tribal Action lacks jurisdiction to adjudicate the Tribal Action primarily for four reasons:

41. *First,* the Tribal Court lacks jurisdiction because the non-member conduct alleged here did not occur within Indian country. Therefore, because the Tribal Court lacks jurisdiction

over non-Indians outside of Indian country, the Court need not even consider whether either of the two exceptions to *Montana*'s presumption against tribal court jurisdiction applies. Indeed, the U.S. Department of the Interior, Indian Affairs, states "Courts of Indian Offences (CFR Courts) operate *where Tribes retain jurisdiction over American Indians* that is exclusive of state jurisdiction, but where Tribal courts have not been established to fully exercise that jurisdiction." (emphasis supplied).[1] Further, the CFR Courts "Civil Jurisdictions" is described as – "The CFR Court can hear many different types of civil cases involving Indian or non-Indian arising in "Indian country", where Tribal members are defendants. Cases involving Indian and/or non-Indian or non-Tribal member are also permitted by consent of the defendant to the personal jurisdiction of the court."[2]

42.  *Second*, even if the alleged conduct had occurred in Indian country, which it did not, Defendant would be unable to overcome the presumption that it and the Tribal Court lack jurisdiction over the non-member conduct under the *Montana* test. The Tribal Action is not predicated on (1) efforts to "regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements" that are "necessary to protect tribal self-government and to control internal relations"; nor is it (2) a proper attempt to exercise authority over conduct on fee lands that "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Plains Commerce Bank*, 554 U.S. at 329-30, 332 (quotation omitted).

---

[1] https://www.bia.gov/CFRCourts

[2] https://www.bia.gov/CFRCourts/tribal-justice-support-directorate

43. Defendant cannot satisfy the "consensual relationship" exception because it cannot show it is protecting any interest that is necessary for its self-government.

44. Nor can Defendant satisfy the second exception, since there is no basis to suggest that the challenged conduct imperils the subsistence or survival of the tribe or that Tribal court jurisdiction is "needed to preserve the [Tribe's] right to make its own laws and be governed by them." *MacArthur*, 497 F.3d at 1075; *Plains Commerce Bank*, 554 U.S. at 329-30, 332 (quotation omitted).

45. *Third*, there is no possible basis for the Tribal Court to assert personal jurisdiction over Plaintiffs in Court of Indian Offenses for the Western Region located in Arizona since Plaintiffs have no contacts with Arizona.

46. *Fourth*, the parties unequivocally agreed in the Retainer Agreement to litigate all disputes in New York County.

47. The Court should therefore declare that (i) Defendant lacks jurisdiction to prosecute the Tribal Action, and (ii) the Tribal Court in the Tribal Action lacks jurisdiction to adjudicate the Tribal Action, and enter an injunction against same.

### B. Plaintiffs Are Not Required To Exhaust Tribal Remedies Before Seeking Relief In Federal Court

48. Plaintiffs have already exhausted their jurisdictional challenges in Tribal Court in the Tribal Action insofar as SRF and Weltz Law filed a motion to dismiss the First Amended Complaint (and initial Complaint), on jurisdictional grounds, and appealed the Tribal Court's decision denying the motion. Even had they not, there are recognized exceptions to exhaustion under which a defendant may immediately file declaratory judgment action. Three exceptions apply here: (1) it is "clear that the tribal court lacks jurisdiction so that the exhaustion requirement would serve no purpose other than delay"; (2) "the tribal court action is patently violative of

express jurisdictional prohibitions"; and (3) "exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction." *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006) (citations and quotations omitted).

49. Exhaustion is not required here because, among other things, it is so clear the Tribal Court lacks jurisdiction that the exhaustion would serve no purpose other than delay. This is true for all the reasons set forth above, and particularly where, as here, a tribal court attempts to assert jurisdiction over the activities of non-Indians outside Indian country. *See, e.g.*, *Hornell Brewing Co.*, 133 F.3d at 1091 (exhaustion not required where conduct did not occur on reservation); *accord Jackson v. Payday Fin., LLC*, 764 F.3d 765, 786 (7th Cir. 2014); *Philip Morris USA, Inc. v. King Mountain Tobacco Co.*, 569 F.3d 932, 945 (9th Cir. 2009).

50. Furthermore, exhaustion is not required here because exhaustion would be futile as the Tribal Court and appellate Tribal court have already denied Plaintiffs' jurisdictional challenges and the Tribal Court has ordered the parties in the Tribal Action to proceed with the case on the merits even though there is no jurisdiction there.

51. Accordingly, the Court should grant declaratory and injunctive relief prior to Plaintiffs' exhaustion of tribal remedies.

## COUNT I
## DECLARATORY JUDGMENT – 28 U.S.C. § 2201

52. Plaintiffs hereby reallege paragraphs 1 through 51, which are incorporated herein by reference.

53. Plaintiffs are entitled to declaratory judgment that the Tribal Court in the Tribal Action lacks jurisdiction to adjudicate the Tribal Action against Plaintiffs.

54. Plaintiffs have exhausted their jurisdictional challenges in the Tribal Action and lack of tribal jurisdiction is so clear that any further exhaustion requirement would serve no purpose other than delay and exhaustion would be futile.

55. Defendant's prosecution of Tribal Action exceeds their lawful authority.

56. The Tribal Action unlawfully purports to adjudicate conduct beyond the scope of the Defendant's and the Tribal Court's jurisdiction.

57. The Tribal Court in the Tribal Action lacks any valid basis to assert the limited and exceptional jurisdiction retained by Indian tribes over conduct by non-members on non-Indian fee land, even where (unlike in this case) such conduct occurs within the boundaries of an Indian reservation or other area of Indian country.

58. Plaintiffs are therefore entitled to a declaratory judgment that: (a) Defendant and the Tribal Court in the Tribal Action are without authority and jurisdiction to prosecute and adjudicate the Tribal Action against Plaintiffs; and (b) Plaintiffs are not required to exhaust tribal remedies in Tribal Court in the Tribal Action prior to seeking relief in this Court.

## COUNT II
## **INJUNCTION – FRCP 65**

59. Plaintiffs hereby reallege paragraphs 1 through 58, which are incorporated herein by reference.

60. For the reasons stated above, Defendant and the Tribal Court in the Tribal Action are exceeding their jurisdiction by prosecuting and adjudicating the Tribal Action against Plaintiffs.

61. Plaintiffs are entitled to a preliminary injunction pursuant to FRCP 65 preserving the status quo and enjoining the Defendant and the Tribal Court in the Tribal Action, and their

agents, employees, successors, and assigns from further prosecution or adjudication of the Tribal Action during the pendency of this Federal litigation.

62. Plaintiffs will suffer irreparable harm absent the preliminary injunction. By way of example, Defendant has asserted sovereign immunity, and Plaintiffs may have no ability to receive recompense for their losses, much less to recoup the extraordinary costs in time and money incurred by litigating this case in a court without jurisdiction. There is therefore a substantial risk that Plaintiffs will suffer losses that cannot be compensated by monetary damages.

63. As set forth above, there is a substantial likelihood that Plaintiffs will prevail on the merits and that this Court will determine that Defendant and the Tribal Court lacks the jurisdiction claimed in the Tribal Action.

64. The harms faced by Plaintiffs and described above far outweigh any that would be sustained by Defendant if the preliminary injunction were granted.

65. The requested injunction will not be adverse to the public interest. No public interest is served by the unlawful exercise of jurisdiction by a tribe or tribal court. Moreover, the public interest is served by the enforcement of Federal law, the supreme law of the land, throughout the United States, including in the courts of its domestic dependent sovereigns, the tribes.

66. Plaintiffs are therefore entitled to a preliminary injunction pursuant to FRCP 65 enjoining the Defendants and the Tribal Court in the Tribal Action, their agents, employees, successors, and assigns from further prosecution or adjudication of the Tribal Action.

67. Plaintiffs are further entitled to a permanent injunction pursuant to FRCP 65 enjoining the Defendant and the Tribal Court in the Tribal Action, their agents, employees, successors, and assigns from further prosecution or adjudication of the Tribal Action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs hereby demand judgment in this action granting the following relief against Defendant:

(1) a declaratory judgment that Defendant is without jurisdiction to prosecute and the Tribal Court is without jurisdiction to adjudicate the Tribal Action and that Plaintiffs are not required to exhaust their remedies Tribal Court prior to seeking relief in this Court;

(2) a preliminary injunction enjoining further prosecution or adjudication of the Tribal Action in Tribal Court;

(3) a permanent injunction enjoining same;

(4) attorneys' fees as permitted under law; and

(5) such other relief as in Plaintiffs' favor as the Court may deem just and proper.

Dated: July 25, 2023

SICHENZIA ROSS FERENCE LLP

By: __/s/ Michael H. Ference_____
    Michael H. Ference, Esq.
    Daniel Scott Furst, Esq.
    Thomas McEvoy, Esq.
    Emily Knight, Esq.
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
mference@srf.law
sfurst@srf.law
tmcevoy@srf.law
eknight@srf.law
(212) 930-9700

Appearing *Pro Se*

WELTZ LAW P.C.

By:   /s/ Irwin Weltz
      Irwin Weltz, Esq.
      Thomas Wolinetz, Esq.
      Robert Volynsky, Esq.
170 Old Country Road, Suite 310
Mineola, New York 11501
irwin@weltz.law
twolinetz@weltz.law
rvolynsky@weltz.law
(877) 905-7671

Appearing *Pro Se*